IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SAM AMENTA, ) | |
| ) | |
| Plaintiff, ) | 8:11CV227 |
| ) | |
| v. ) | |
| ) | |
| ROMEO'S PIZZA, INC., ) | MEMORANDUM AND ORDER |
| ) | |
| Defendant. ) | |

This matter is before the court on the defendant's motion to dismiss for lack of personal jurisdiction, Filing No. 18. This is an action for trademark infringement, false designation of origin, unfair competition, and deceptive trade practices under the Lanham Act, 15 U.S.C. § 1051 et seq., the Ohio Deceptive Trade Practices Act, Ohio Rev. Code § 4165.01 et seq., and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301 et seq.[1] In his complaint, the plaintiff alleges that the defendant wrongfully adopted and began using a service mark similar to the plaintiff's in connection with the sale, offering for sale and advertising of restaurant services in interstate commerce.

**I. Facts**

The parties have submitted evidence that shows that the plaintiff is the owner of Service Mark Registration No. 1,343,565 with the United States Patent and Trademark Office ("USPTO") for the mark ROMEO'S MEXICAN FOOD AND PIZZA. Filing No. 26, Index of Evid., Ex. 1, Declaration of Sam Amenta ("Amenta Decl.") at 1. The mark has

---

[1]The Lanham Act governs the use of federal trademarks. *Davis v. Walt Disney Co.*, 430 F.3d 901, 903 (8th Cir. 2005) ("The Lanham Act prohibits the use of a mark in connection with goods or services in a manner that is likely to cause confusion as to the source or sponsorship of the goods or services.")

been used on various restaurants in the Omaha metropolitan area since 1976 and has been registered since 1985. *Id.* The defendant is an Ohio corporation that utilizes the service mark ROMEO'S PIZZA ("Defendant's Mark") at its restaurants within the state of Ohio. Filing No. 20, Index of Evid., Ex. 1, Affidavit of Sean Brauser ("Brauser Aff.") at 1. The defendant has filed two federal trademark applications for its marks. Filing No. 26, Index of Evid. , Ex. 1, Amenta Decl. at 1; Exs. 2 & 3. The defendant operates restaurants in Ohio that serve Italian food and has never conducted business in Nebraska or entered into any business relationship or contracted with a Nebraska resident. Filing No. 20, Index of Evid., Ex. 1, Brauser Aff. at 1-2.

The defendant operates and maintains a Web site at www.romeospizza.com. *Id.* at 1. This Web site has various features and links including the following: Menu, Catering, About Us, Locations, Franchising, Media & Awards, Romeo's Rewards, Careers, Coupons, Contact Us, and Join Our eClub. Filing No. 26, Index of Evid., Ex. 1, Amenta Decl. at 1, Ex. 1. The Web site includes several interactive features, including one that allows an individual to join the defendant's mailing list and enables the defendant to build and maintain a customer list. *Id.* at 8. The Web site also includes an interactive feature that allows people to download coupons. *Id.* at 9. The coupons are not limited to particular restaurants or geographic locations, nor do they indicate the location of the defendant's restaurants. *Id.*, Exs. 5-9. Further, the Web site allows interaction through Facebook and Twitter and invites users interested in franchise opportunities to visit those sites. *Id.*

The plaintiff became aware of the defendant's alleged use of the plaintiff's mark when its customers attempted to negotiate coupons from the defendant's Web site at the plaintiff's restaurants in Omaha in 2010. *Id.*, Amenta Decl. at 1. In December 2010,

Amenta sent the defendant a letter requesting that the defendant cease use of all infringing marks. *Id.* at 2-3; Ex. 4. Amenta also informed the defendant of the alleged infringement and resulting confusion by phone. *Id.,* Amenta Decl. at 2. Since he sent the cease and desist letter in December 2010, additional customers have presented defendant's coupons to Amenta. *Id.* Further, there is evidence that job applicants have printed applications from the defendant 's Web site and presented them to plaintiff. *Id.* The job application does not refer to or exclude any state or location. *Id.*, Ex. 11. Evidence also shows that the defendant has opened franchises in St. Louis, Missouri, and has plans to sell franchises throughout the Midwest. *Id.*, Ex. 10. Defendant has produced a summary showing that its Web site has been visited by IP addresses assigned to Nebraska computers 1,165 times in the last six months alone. *Id.*, Declaration of Brian McKernan at 1; Ex. 16.

The defendant contends that there are not sufficient contacts between the defendant and the State of Nebraska to establish personal jurisdiction and satisfy the requirements of the Due Process Clause of the United States Constitution.

The plaintiff argues that defendant's Web site is sufficiently "interactive" to confer specific personal jurisdiction over Romeo's on Nebraska courts because: (a) the Romeo's site has been accessed by Nebraska residents who downloaded coupons and tried to use them at plaintiff's restaurant, (b) the site has an eClub that anyone in the world can join by providing an e-mail address, and (c) Romeo's is "willing and able" to transact business with Nebraska residents.

**II. Law**

When jurisdiction is challenged on a pretrial motion to dismiss, the nonmoving party need only make a prima facie showing of jurisdiction. *Pangaea, Inc. V. Flying Burrito LLC,* 647 F.3d 741, 745 (8th Cir. 2011). Where the district court does not hold a hearing and instead relies on pleadings and affidavits, the court must look at the facts in the light most favorable to the nonmoving party, and resolve all factual conflicts in favor of that party. *Id.*

Where, as here, no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the court sits. Fed. R. Civ. P. 4(k)(1). A federal court may exercise jurisdiction over a nonresident defendant only if the requirements of the forum state's long-arm statute are met and the exercise of jurisdiction comports with due process. *Quality Pork Int'l v. Rupari Food Servs., Inc.,* 675 N.W.2d 642, 649 (Neb. 2004). By its terms, Nebraska's long-arm statute extends Nebraska's jurisdiction over nonresidents having any contact with or maintaining any relation to this state as far as the United States Constitution permits. *S.L. ex rel. Susan L. v. Steven L.,* 274 Neb. 646, 742 N.W.2d 734 (Neb. 2007); Neb. Rev. Stat. § 25-536(2).

Under Nebraska law, before a court can exercise personal jurisdiction over a nonresident defendant, the court must first determine whether the statutory standard of Nebraska's long-arm statute, Neb. Rev. Stat. § 25-536 (Reissue 2008), is satisfied. *Id.* at 649. If the long-arm statute has been satisfied, the court must then determine whether minimum contacts exist between the defendant and the forum state for personal jurisdiction over the defendant without offending due process. *Id.* Accordingly, a Nebraska court resolving issues of personal jurisdiction would engage in a two-part analysis: First, the court would determine if, under the Nebraska long-arm statute, there is jurisdiction over the

4

nonresident defendant; and, second, if Nebraska law provides a basis for such jurisdiction, the court would then decide whether the exercise of personal jurisdiction over the defendant comports with the federal constitutional due process requirements. *Williams v. Gould, Inc.*, 443 N.W.2d 577, 585 (1989).

In order to satisfy the due process clause of the Constitution, a defendant must have "minimum contacts [with the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The benchmark for determining whether the exercise of personal jurisdiction satisfies due process is whether the defendant's minimum contacts with the forum state are such that the defendant should reasonably anticipate being haled into court there. *S.L. ex. rel Susan L.*, 742 N.W.2d at 741.

The minimum contacts necessary for due process may be the basis for either general or specific jurisdiction. *Pangaea, Inc. v. Flying Burrito LLC*, 647 F.3d 741, 745-46 (8th Cir. 2011); *see also Erickson v. U-Haul Int'l*, 738 N.W.2d 453, 464 (Neb. 2007) (noting that "[a] court exercises two types of personal jurisdiction depending upon the facts and circumstances of the case: general personal jurisdiction or specific personal jurisdiction"). Specific jurisdiction is at issue here. It is a more limited form of submission to a state's authority for "disputes that 'arise out of or are connected with the activities within the state.'" *J. McIntyre Mach.*, — U.S. at —, 131 S. Ct. at 2787. Specific jurisdiction is conferred where a defendant "purposefully avails itself of the privilege of conducting activities within the forum State" and thereby "submits to the judicial power of an otherwise foreign sovereign to the extent that power is exercised in connection with the defendant's

activities touching on the State." *Id.* at 2787–88 (stating "[i]n other words, submission through contact with and activity directed at a sovereign may justify specific jurisdiction in a suit arising out of or related to the defendant's contacts with the forum") (internal quotation omitted); *Quality Pork Int'l,* 675 N.W.2d at 650-51 (noting that if the defendant's contacts are neither substantial nor continuous and systematic, but the cause of action arises out of or is related to the defendant's contacts with the forum state, a court may assert specific personal jurisdiction over the defendant depending on the quality and nature of the defendant's contacts). The purposeful availment or purposeful direction requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts. *Stanton v. St. Jude Med., Inc.,* 340 F.3d 690, 693–94 (8th Cir. 2003) (citations omitted).

Jurisdiction is proper where the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum state. *Id.* In the Eighth Circuit, when evaluating a challenge to personal jurisdiction, courts consider the following five factors: (1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of the defendant's contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. *Burlington Industries, Inc. v. Maples Industries, Inc.,* 97 F.3d 1100, 1102 (8th Cir.1996).

In evaluating the question of whether activities on generally accessible Web-based platforms should subject a defendant to specific personal jurisdiction, the Eighth Circuit has adopted the sliding scale approach of *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.,* 952

F. Supp. 1119, 1124 (W.D. Pa.1997). *Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 711 (8th Cir. 2003). The *Zippo* test provides:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Lakin*, 348 F.3d at 710–11 (quoting *Zippo Manufacturing Co.*, 952 F. Supp. at 1124); *Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010) (noting that the scale runs from active contract formation and repeated transmission of computer files to mere posting of information on a Web site). Under *Zippo*, whether specific personal jurisdiction could be conferred on the basis of an interactive Web site depends not just on the nature of the Web site but also on evidence that individuals in the forum state accessed the Web site in doing business with the defendant. *Johnson*, 614 F.3d at 797.

Trademark infringement and unfair competition are torts. *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1389–90 (8th Cir. 1991). When the cause of action involves a tortious act, a plaintiff can also obtain specific jurisdiction over a nonresident defendant by employing the *Calder* effects test. *Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010); *see Calder v. Jones*, 465 U.S. 783, 789-90 (1984). That test provides that a defendant's tortious acts can serve as a source of personal jurisdiction where the plaintiff makes a prima facie showing that the defendant's acts (1) were

7

intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—in the forum state.  *Johnson*, 614 F.3d at 796; *Steinbuch* 518 F.3d at 586; *see also* *J. McIntyre Machinery, Ltd.,* 131 S. Ct. at 2787 ("[I]n some cases, as with an intentional tort, the defendant might well fall within the State's authority by reason of his attempt to obstruct its laws").

In applying the effects test, the economic injury in trademark infringement cases occurs in the state where the trademark owner has its principal place of business.  *Dakota Indus., Inc.,* 946 F.2d at 1389–90 (noting that in trademark infringement actions, the claim arises at the place of the "passing off," which is where a deceived customer buys the defendant's product believing that he is buying the plaintiff's).  However, the *Calder* test is "merely as an additional factor to consider when evaluating a defendant's relevant contacts with the forum state."  *Johnson,* 614 F.3d at 797 (noting that *Calder* requires the consideration of additional factors when an intentional tort is alleged).  The test is construed narrowly and "absent additional contacts, mere effects in the forum state are insufficient to confer personal jurisdiction."  *Id.*

### III.  Discussion

Applying the *Zippo* framework to the present case, the court concludes that the defendant's Web-based activities are somewhere between the "mere posting" end of the scale and a situation "where a defendant clearly does business over the Internet."  The defendant's site is interactive in that it allows customers to download coupons.  Users interact with the defendant's computers.  Though the defendant did not intentionally target

Nebraska, once it received notice of infringement from the plaintiff, the defendant knew the brunt of the injury would be felt in this state and did nothing to avoid that consequence.

Although, absent additional contacts, mere effects in the forum state may be insufficient to confer jurisdiction, such additional contacts are present in this case. There is no doubt that Nebraska residents accessed the Web site and obtained coupons. Further, evidence shows the coupons caused confusion and arguably harmed the plaintiff's business in Nebraska. There is also evidence that the defendant actively solicited franchisees in the Midwest and expressed interest in expanding throughout the Midwest, including Nebraska. These are the sorts of purposeful availment that confer personal jurisdiction over a defendant. The defendant reached out to Nebraska residents in making coupons available to them, and the allegedly infringing coupons triggered this action. A person making coupons—with no geographical limitations—available on a Web site can reasonably expect to be haled into court for claims connected to that act. The court finds the defendant had enough contacts with Nebraska to satisfy due process. Accordingly,

IT IS ORDERED:

1. The defendant's motion to dismiss for lack of personal jurisdiction ([Filing No. 18](#)) is denied.

2. The defendant shall file an answer or responsive pleading within 14 days of the date of this order.

DATED this 27th day of March, 2012.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge